UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SCHNEIDER LOGISTICS, INC.,

   Plaintiff,

  v.             Case No. 22-C-1393

WASTEQUIP, LLC,

   Defendant.

---

**DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

---

  Plaintiff Schneider Logistics, Inc. (SLI) brought this action against Defendant Wastequip, LLC, alleging two counts of breach of contract for unpaid invoices for logistical services and unpaid gainshare compensation based on agreed-upon performance metrics. Additionally, Wastequip asserts a counterclaim for breach of contract, based on SLI's alleged failure to provide services after Wastequip issued a 90-day notice of termination of their agreement. The court has jurisdiction under 28 U.S.C. § 1332. Before the court are the parties' cross-motions for summary judgment. For the following reason, SLI's motion for summary judgment will be granted and Wastequip's motion will be denied.

## BACKGROUND

  SLI is a Wisconsin corporation that provides freight and logistics services to customers across the United States. Stipulated Findings of Fact (SFOF) ¶¶ 1–2, Dkt. No. 36. Wastequip is a privately held manufacturer of waste-handling equipment. *Id.* ¶ 3. Wastequip issued a request for proposal seeking pitches from logistics providers and, after SLI pitched its services to Wastequip, the two entered into a Master Agreement for Logistics Services on December 26, 2019.

*Id.* ¶¶ 10–15. The Agreement provided that SLI would "coordinate the transportation of [Wastequip's] Products from, to and between [Wastequip's] Facilities." *Id.* ¶ 22. Further, it stated that SLI's "freight management services may include order processing and shipment tracing and tracking on an exception basis for: (i) inbound Products shipments from Customer's Suppliers to Customer's facilities, and (ii) redistribution of Customer's Products between Customer's facilities, and (iii) outbound Products shipments from Customer's facilities to Customer's customers." *Id.* SLI agreed to identify carriers, negotiate rates, tender out Wastequip's freight, and ensure carriers have picked up and delivered freight for Wastequip. *Id.* ¶ 30. SLI was also required to provide customer services, responding to phone calls, emails and communicating with carriers promptly. *Id.* ¶¶ 25–29.

Although the Agreement had an effective date of January 1, 2020, the parties agreed that services would start on a later "Go-Live Date," which was defined as "the date that implementation activities and testing have been successfully completed and SLI begins performing the activities in Appendix A, Section 1." *Id.* ¶¶ 17–19. The effective "Go-Live Date" was May 4, 2020. Def.'s Proposed Findings of Fact (DPFOF) ¶ 68, Dkt. No. 37. In exchange for these services, Wastequip agreed to pay SLI a variety of fees, as defined in Appendix B of the Agreement. Pl.'s Proposed Findings of Fact (PPFOF) ¶ 15, Dkt. No. 42. Wastequip further agreed to pay SLI "invoice[s] electronically within thirty (30) days of SLI's invoice date" and, "[i]n the event [Wastequip] contests any SLI invoice, [Wastequip] will notify SLI within thirty (30) days of SLI's invoice date." *Id.* ¶ 16; Dkt. No. 19-1 at 24. The Agreement states that "[i]f any undisputed payment due SLI by [Wastequip] is received after its due date, then SLI will be entitled to interest on the amount past due equal to 0.5% per month, or the highest amount allowed by law, whichever is lower, for each month or fraction thereof, until payment in full of the past amount due is received." PPFOF

¶ 18. And if Wastequip "fail[ed] to pay any undisputed amount such that SLI is required to commence a collection action, [Wastequip] will pay SLI's reasonable collection costs and expenses, including its attorneys' fees." *Id.* ¶ 19.

The Agreement's initial term began on January 1, 2020, and was to "continue for three years thereafter," unless terminated earlier, as permitted by the Agreement, or extended. SFOF ¶¶ 41–42. Either party could, at any time, terminate the Agreement for nonperformance, failure to pay for services, insolvency, or without cause. *Id.* ¶¶ 43–45. If a party chose to terminate the Agreement due to the other party's failure to materially perform its obligations, the terminating party had to provide written notice of the alleged breach and allow the other party to cure its breach within 30 days of receipt of such notice. PPFOF ¶ 22. If a party terminated the Agreement without cause after the Go-Live Date, the terminating party had to provide "at least 90 days' prior notice of such intended termination." SFOF ¶ 46. Termination without cause did not require a right to cure any supposed breaches of the Agreement or other failures to perform. *Id.* ¶ 47.

The Agreement included an "Incentive-based Gainshare Program." SFOF ¶ 32. Pursuant to Gainshare and Painshare Item #1 of this program, SLI's achievement or failure to achieve specific performance metrics would result in additional payments due from Wastequip (gainshare) for cost savings, or payments due from SLI (painshare) for costs incurred. PPFOF ¶ 25. If SLI achieved more than 50% Return on Investment ("ROI"), Wastequip would pay a gainshare to SLI equal to 25% of the total cost savings achieved in excess of 50% ROI, with a $300,000.00 maximum payment. *Id.* ¶ 27. If SLI did not achieve program savings (i.e., a negative ROI), SLI would pay to Wastequip the difference between calculated ROI and the Wastequip cost. *Id.* ¶ 28. "Payments [were] to be made on a 12-month annual basis based on actual go-live date." *Id.* ¶ 29. Moreover, one of the purposes of the Agreement was to decrease the number of missed loads at

3

Case 1:22-cv-01393-WCG   Filed 10/03/24   Page 3 of 14   Document 55

the end of Wastequip's fiscal month. SFOF ¶¶ 36–37. To that end, pursuant to Painshare Item #2, if SLI missed (i.e., failed to deliver) zero end-of-month loads in a quarter, Wastequip would pay SLI $1,000 per month with a maximum of $3,000 per quarter. *Id.* ¶ 38. If SLI missed one to ten end-of-month loads, when provided 24 hours' notice by Wastequip, there was no quarterly painshare or gainshare payout by either party. *Id.* ¶ 39. If SLI missed eleven or more end-of-month loads, when provided 24 hours' notice, a $377 per-load charge payment was subtracted from SLI's management fee. PPFOF ¶ 33.

SLI was primarily responsible for calculating the amounts owed by either party under the program. *Id.* ¶ 34. Starting after the Go-Live Date, SLI calculated, and the parties reviewed, the amounts owed between them every month. SFOF ¶ 35; DPFOF ¶ 54. Approximately one year after the Go-Live Date, the parties jointly reviewed the cumulative ROI data for the year and determined that SLI achieved a non-negative cumulative ROI of less than 50% during the first year of performance, so neither party owed the other any payment for that year. PPFOF ¶ 39; DPFOF ¶ 87. A year later, the parties again reviewed the cumulative ROI data from the second year of performance. PPFOF ¶ 40. Because SLI achieved over 50% cumulative ROI during the second year, it is undisputed that SLI earned a gainshare compensation in the amount of $69,642.37, which remains unpaid. *Id.* ¶¶ 41–42.

On May 3, 2022, Wastequip provided SLI with a 90-day notice of its intent to terminate the Agreement without cause. *Id.* ¶ 44. SLI never owed Wastequip any painshare payment prior to that date. *Id.* ¶ 37. Although Wastequip claims that it could have terminated the Agreement with cause due to SLI's failure to perform its obligations, Wastequip did not provide any reason for its decision to terminate, nor did it send SLI a notice of breach prior to terminating the Agreement. *Id.* ¶¶ 45–46; DPFOF 91–100. SLI was to continue providing services to Wastequip

4

through August 1, 2022, and continue to monitor and calculate monthly ROI data after it received the termination letter. SFOF ¶¶ 52–53.

SLI calculated a negative ROI of $241,964.00 from May 1 through August 1, 2022. PPFOF ¶ 50. SLI disputes that it owes a painshare payment to Wastequip for any negative ROI during this time, however, because it accrued over a period of less than twelve months. *Id.* ¶ 51. Additionally, SLI issued to Wastequip two invoices for services it provided in June and July 2022, in the amounts of $94,458.84 and $60,287.43, respectively, for a total of $154,773.26. SFOF ¶¶ 54–56.

Wastequip did not dispute either invoice. *Id.* ¶ 57. Rather, it chose not to pay the invoices because it sought to offset SLI's $241,964.00 negative ROI (totaling $243,885.18 with transactional costs) against the two invoices, as well as the unpaid gainshare compensation for the second year of the Agreement. *Id.* ¶ 58; DPFOF ¶ 105. Wastequip also asserts that SLI breached the Agreement by failing to provide "continuous load tracking;" "24/7 customer service and extended support availability;" "real-time communication between SLI, Wastequip, and outside carriers;" and by missing shipments scheduled by Wastequip. SFOF ¶ 59. Wastequip claims to have lost $23,000.00 due to SLI's failure to move enough freight, which prevented Wastequip from reducing its own logistics employee headcount. Wastequip also claims that SLI owes it another $12,441.00 under the painshare provision for missing end-of-month loads in April, May, and June of 2022. DPFOF ¶¶ 126, 149. On balance, Wastequip claims that it is owed $55,347.63. *Id.* ¶ 150.

Finally, the parties agreed that "the prevailing party in any litigation between the parties hereto arising out of or relating to this Agreement or the breach thereof will be entitled to recover from the other party reasonable expense, attorneys' fees, and costs incurred by the prevailing party

5

in responding to and participating in such litigation." SFOF ¶ 60; Dkt. No. 19-1 at 10–11. Based on this provision, each party claims it is entitled to recover its fees and costs.

On November 22, 2022, SLI filed a Complaint against Wastequip, alleging one count of breach of contract and one count of unjust enrichment for the unpaid June-July 2022 invoices. Dkt. No. 1. On January 13, 2023, Wastequip filed its Answer, Affirmative Defenses and Counterclaim, alleging a single claim of breach of contract for SLI's missed shipments and refusal to make shipments for Wastequip's customers after May 2022. Dkt. No. 10. On February 17, 2023, SLI filed its Answer and Affirmative Defenses to Wastequip's Counterclaim. Dkt. No. 18. On March 1, 2023, SLI filed an Amended Complaint against Wastequip, alleging two counts of breach of contract for the unpaid June-July 2022 invoices and the 2021-2022 Gainshare, respectively. Dkt No. 19. On March 15, 2023, Wastequip filed its Answer and Affirmative Defenses to SLI's Amended Complaint, without asserting a new or in any way amending its asserted counterclaim. Dkt. No. 20.

## LEGAL STANDARD

Summary judgment is proper where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine if a reasonable trier of fact could find in favor of the nonmoving party. *Wollenburg v. Comtech Mfg. Co.*, 201 F.3d 973, 975 (7th Cir. 2000). A fact is material only if it might affect the outcome of the case under governing law. *Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986, 990 (7th Cir. 1993). The fact that the parties filed cross-motions for summary judgment does not alter this standard. In evaluating each party's motion, the court must "construe all inferences in favor of the party against whom the motion under consideration is made." *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561–62 (7th Cir. 2002) (cleaned up). The party opposing the motion for summary

judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citation omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citation omitted). But even on issues where the moving party has the burden of proof, when the record, taken as a whole, could not lead a rational jury to find for the non-moving party, there is no genuine issue and therefore no reason to go to trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

The Agreement provides that it will be governed by, and its terms will be construed in accordance with, the laws of the State of Wisconsin. Dkt. No. 19-1 at 12. Under Wisconsin law, to prevail on a claim for breach of contract, a plaintiff must establish: "(1) a valid contract; (2) breach of that contract by the defendant; and (3) damage from the breach." *Gallo v. Mayo Clinic Health System-Franciscan Med. Ctr., Inc.*, 907 F.3d 961, 965 (7th Cir. 2018); *Northwestern Motor Car, Inc. v. Pope*, 51 Wis. 2d 292, 296, 187 N.W.2d 200 (1971). Because the validity of the Agreement is undisputed, the disagreement revolves around the meaning of its terms.

In Wisconsin, "the construction of a written contract is a question of law." *Jones v. Jenkins*, 88 Wis. 2d 712, 722, 277 N.W.2d 815 (1979). "Contracts are interpreted to give effect to the parties' intent, as expressed in the contractual language." *Seitzinger v. Community Health Network*, 2004 WI 28, ¶ 22, 270 Wis. 2d 1, 676 N.W.2d 426. "Such language is to be interpreted consistent with what a reasonable person would understand the words to mean under the

7

circumstances." *Id.* "Where the terms of a contract are clear and unambiguous, we construe the contract according to its literal terms." *Tufail v. Midwest Hosp., LLC*, 2013 WI 62, ¶ 26, 348 Wis. 2d 631, 833 N.W.2d 586. "If the terms of the contract are ambiguous, evidence extrinsic to the contract itself may be used to determine the parties' intent." *Id.* ¶ 27. In such cases, "the court will ordinarily place that interpretation upon the terms of the contract which the parties in the course of their dealings have adopted." *Halvorson v. Tarnow*, 258 Wis. 11, 16, 44 N.W.2d 577 (1950). "A contract provision is ambiguous if it is fairly susceptible of more than one construction." *Mgm't Comput. Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 177, 557 N.W.2d 67 (1996).

### A. Wastequip's Breach

It is undisputed that Wastequip agreed to pay SLI for logistic services it performed for Wastequip. SFOF ¶ 31; Agreement, Dkt. No. 19-1 at ¶ 4.1. SLI was to invoice Wastequip, and Wastequip agreed "to pay SLI's invoice electronically within thirty (30) days of SLI's invoice date to the SLI account specified on the invoice." Agreement at 24. In the event Wastequip contested any SLI invoice, Wastequip was to "notify SLI within thirty (30) days of SLI's invoice date," and Wastequip and SLI would "then enter into good faith discussions to resolve any disputed charge in SLI's invoice in accordance with Section 13 of the Agreement," *id.*, which outlined an informal dispute resolution procedure that called for the senior executives of both SLI and Wastequip to discuss the dispute and attempt in good faith to resolve it before formal proceedings for judicial resolution were initiated. *Id.* at 10.

SLI issued an invoice to Wastequip for $94,485.84 for services rendered by SLI to Wastequip in June 2022. SFOF ¶ 54. SLI also issued an invoice to Wastequip for $60,287.84 for services rendered in July 2022. Id. ¶ 55. Wastequip did not dispute either invoice, which together

8

Case 1:22-cv-01393-WCG    Filed 10/03/24    Page 8 of 14    Document 55

total $154,773.26. *Id*. ¶¶ 56, 57. Wastequip's failure to pay the undisputed invoices when they became due constitutes a breach of contract, as alleged in Count I of the Amended Complaint, resulting in damages of $154,773.26. SLI is therefore entitled to summary judgment on Count I.

The same is true for the unpaid gainshare amount for the second year of the Agreement asserted in Count II of the Amended Complaint. It is undisputed that "SLI earned a Gainshare for May through April 2022, in the amount of $69,642.37." Wastequip Responses to SLI's PFOF, Dkt. No. 45, ¶ 41. It is also undisputed that Wastequip has failed to pay SLI the "Year Two Gainshare" as required under the terms of the Agreement. It thus follows that SLI is entitled to summary judgment on Count II of the Amended Complaint.

Wastequip asserted as an affirmative defense that it should not have to pay SLI because whatever it may owe is offset by the amount due it under the gainshare/painshare program outlined in the Agreement. Wastequip claims that it is entitled to a payment of $243,885.15 based on SLI calculations of negative ROI from May through August 2022. Wastequip contends that "Offset is not an excuse, it's the proper outcome of the parties' claims." Def.'s Br. in Opp'n at 17, Dkt. No. 43. But an offset assumes there is something to offset. It is not a defense to SLI's claims but is instead a claim of Wastequip's own that Wastequip contends is greater than the amount of the claims that SLI has asserted against it.

Whether Wastequip's painshare claim is viewed as an affirmative defense or a counterclaim for an alleged breach by SLI, it fails as a matter of law. The $243,885.15 amount Wastequip claims represents the negative ROI that SLI calculated over the three months following Wastequip's notice of termination. The Agreement provided, however, that the payments under the Gainshare/Painshare program were to be "made on a 12 month annual basis based on actual go-live date." Dkt. No. 19-1 at 28. SLI argues that this was designed to be evaluated on an annual

9

basis, as opposed to on a shorter basis, "to account for freight market fluctuations and other short-term factors that are outside of SLI's control." SLI Br. In Supp., Dkt. No. 41, at 6. But regardless of the reason, the Agreement states that the payments are to be made on a 12-month basis. Because the contract was terminated only three months after the "go-live date" of the third year of the Agreement, there was no "12-month basis" upon which the Painshare payment could be calculated. It thus follows that no "painshare" payment was due. As a result, SLI did not breach the Agreement by failing to pay Wastequip such an amount.

Wastequip argues that this interpretation gives rise to illogical outcomes because it "makes little business sense" to preclude Wastequip from collecting its three-month painshare payment merely because it elected to terminate the Agreement before the end of a full twelve-month period and did not wait another nine months to do so. Def.'s Br. in Opp'n at 11. But Wastequip is the party that proposed the painshare program and the parties negotiated it at arm's length and proceeded thereunder. Wastequip Response to SLI PFOF ¶ 26. Its argument that enforcement of the Agreement by its terms is disadvantageous to Wastequip means simply that it should have negotiated other terms or chosen a different date for its termination of the Agreement. Courts "will not re-write a contract to read the way a party wishes it had been drafted." *Hernandez v. BNG Mgmt. Ltd. P'ship*, 2012 WI App 65, ¶ 15, 341 Wis. 2d 726, 815 N.W.2d 725.

Regardless of how the provision operates and whether it made good business sense from Wastequip's perspective, Wastequip was free to negotiate more favorable terms and specify how painshare and gainshare payments would be calculated over a less-than 12-month period. Absent such terms, it would be improper for this court construe the Agreement so as to require payment based on a period shorter than 12 months. Thus, because payments under the Gainshare and

Painshare Item #1 were to be paid on an annual basis, Wastequip's claim that SLI owes it a painshare payment for a three-month period fails as a matter of law.

### B. SLI's Breach

As an alternative to its argument that SLI's claimed damages resulting from Wastequip's breach should be set off against the "painshare" calculation for the three-month period after it gave SLI notice of termination, Wastequip argues that SLI's failure to provide the services it promised during that period constitutes a breach of the Agreement for which it is entitled to essentially the same damages. Wastequip Br. In Supp., Dkt. No. 35, at 18. More specifically, Wastequip now claims that SLI breached the Agreement when it "failed to obtain market rates for truck loads that SLI outsourced" after May 2022, resulting in a $243,885.15 painshare "by incurring fees above market rate." *Id.* at 19. Additionally, Wastequip claims that SLI breached the Agreement when it "was only able to move a fraction of Wastequip's freight," thereby causing Wastequip an alleged $23,000.00 loss in maintaining its own logistics employee headcount to cover the remaining freight. *Id.* Wastequip also alleges that SLI has failed to pay it for end of month load misses, for which it owes Wastequip $12,441. Finally, Wastequip contends that SLI failed to provide load tracking and 24/7 customer service and real-time communications cause it undetermined damages.

Wastequip's attempt to reformulate its painshare claim as a breach of contract claim fails for the same reason the court rejected it as an affirmative defense. Painshare payments were required to be based on a 12-month period, not three months. Wastequip contends that it nevertheless sustained damages in such amount as a result of SLI's failure to obtain market rates for truck loads that SLI outsourced. SLI does offer an explanation for why freight charges significantly changed during the term of the Agreement due to the global pandemic and the economic changes caused by the pandemic, as well as how Wastequip's business practices

11

adversely affected SLI's ability to obtain lower rates. SLI Response to Wastequip Mot. of S.J., Dkt. No. 47, at 5–6. But regardless of why the rates were higher, Wastequip fails to identify any contractual provision that SLI violated.

SLI was required under the terms of the Agreement to "coordinate the transportation of [Wastequip's] Products from, to and between [Wastequip's] Facilities." SFF ¶ 22. The Agreement further provided that "SLI's freight management services may include order processing and shipment tracing and tracking on an exception basis for (i) inbound Products from [Wastequip's] Suppliers to [Wastequip's] facilities, and (ii) redistribution of [Wastequip's] Products between [Wastequip's] facilities, and (iii) outbound Products shipments from [Wastequip's] facilities to [Wastequip's] customers." *Id.* Wastequip points to no provision of the Agreement requiring SLI to obtain any particular rate for Wastequip's loads. Wastequip's claim that it suffered a loss as a result of SLI's failure to obtain more favorable rates is nothing more than an effort to resurrect its already rejected painshare claim.

As to Wastequip's additional claims of breach, SLI argues that Wastequip waived the materiality of its alleged breaches when it terminated the Agreement without cause. But materiality is not at issue here. A material breach of a contract by one party excuses performance by the other. A party is not automatically excused from future performance of contract obligations any time a breach by the other party occurs. "If the breach is relatively minor and not 'of the essence', the plaintiff is himself still bound by the contract . . . ." *Management Computer Services, Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis.2d 158, 183, 557 N.W.2d 67 (1996) (quoting Arthur Linton Corbin, CORBIN ON CONTRACTS § 700, at 310 (1960)). The claims here are not that SLI materially breached the Agreement so as to excuse Wastequip from future performance. Instead, Wastequip alleges that SLI breached the Agreement in various ways that caused

12

Wastequip damages. Nothing in the provision of the Agreement governing termination without cause suggests that Wastequip cannot recover damages for SLI's breach of the agreement, whether material or not.

SLI also claims that Wastequip has attempted to add claims in its summary judgment briefing that were not alleged in its counterclaim. These include Wastequip's claims that SLI breached the Agreement by failing to obtain market rates for shipments and in failing to perform other services that prevented Wastequip from reducing its own employee headcount. SLI contends that, because these claims were not clearly alleged in the counterclaim, they cannot be considered on summary judgment. In support of its argument, SLI cites *Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 488 (7th Cir. 2023), in which the court affirmed the district court's determination that the plaintiff's "new conduct-based fraud claim—asserted for the first time at summary judgment—was beyond the scope of her complaint" and thus could not be asserted for the first time on summary judgment.

While Wastequip's counterclaim could have been clearer, the court is satisfied that it sufficiently alleges that SLI failed to provide the services it agreed to provide under the Agreement and that Wastequip suffered damages as a result. Ultimately, while SLI's response may call into question Wastequip's remaining claims, it is not enough to warrant entry of judgment dismissing those claims in their entirety. The record is simply not sufficiently developed for the court to conclude that, as a matter of law, Wastequip cannot establish a breach on the part of SLI for which it is entitled to some relief. Accordingly, SLI's motion for summary judgment is denied as to the remainder of Wastequip's counterclaim for breach of contract.

## CONCLUSION

In sum, SLI's motion for summary judgment (Dkt. No. 40) is **GRANTED** as to Counts I and II of Amended Complaint. SLI's motion is also granted as to Wastequip's counterclaim that SLI breached the Agreement by failing to obtain market rates for its shipments. SLI's motion is **DENIED** as to Wastequip's remaining claims, and Wastequip's motion (Dkt No. 34) is **DENIED** in its entirety. Determination of attorneys' fees and costs will await the outcome of the case. The Clerk is directed to set the matter on the court's calendar for a telephone conference to discuss further proceedings.

**SO ORDERED** at Green Bay, Wisconsin this 3rd day of October, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge